IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRANDON J. PALMER<br>o/b/o<br>DIANA L. PALMER<br>   Plaintiff<br>  v.<br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br>   Defendant | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br><br><br><br>NO. 08-1823 |

**ORDER**

AND NOW, this           day of                  , 2009, after careful review and independent consideration of Plaintiff's request for review, Defendant's response thereto, Plaintiff's reply thereto, and review of the Report and Recommendation of Carol Sandra Moore Wells, United States Magistrate Judge, it is hereby **ORDERED** that:

 1. The Report and Recommendation is **APPROVED** and **ADOPTED.**

 2. The Plaintiff's Request for Review is **GRANTED** in part and **DENIED** in part.

 3. The case is **REMANDED** to the Commissioner of the Social Security Administration so that the Administrative Law Judge ("ALJ") can conduct additional proceedings consistent with the Report and Recommendation. Specifically, upon remand, the ALJ shall reconsider Plaintiff's residual functional capacity as regards all environmental restrictions set by Dr. Wilbert Warren and, thereafter, submit an appropriate hypothetical question to the vocational expert.

It is so **ORDERED.**

                     BY THE COURT:


                     _____
                     STEWART DALZELL, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRANDON J. PALMER | : | CIVIL ACTION |
| o/b/o | : | |
| DIANA L. PALMER | : | |
|     Plaintiff | : | |
|     v. | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
|     Defendant | : | NO. 08-1823 |

**ORDER**

AND NOW, this _____ day of _____, 2009, it is hereby **ORDERED** that Judgment is **ENTERED** in favor of Plaintiff Brandon J. Palmer and against Defendant Michael J. Astrue, Commissioner of the Social Security Administration.

It is so **ORDERED**.

BY THE COURT:

_____
STEWART DALZELL, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRANDON J. PALMER | : | CIVIL ACTION |
| o/b/o | : | |
| DIANA L. PALMER | : | |
| Plaintiff | : | |
| v. | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant | : | NO. 08-1823 |

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                       April 8, 2009

Brandon J. Palmer, son of the late Diana L. Palmer ("Plaintiff"), has been substituted as the plaintiff for the Disability Insurance Benefits ("DIB") claim of his mother under Title II of the Social Security Act.[1] Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her DIB claim. Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has filed a reply. For the reasons set forth below, it is recommended that Plaintiff's Request for Review be GRANTED in part and DENIED in part, Judgment be entered in favor of Plaintiff and against Defendant, and the case be REMANDED to the Commissioner for further proceedings consistent with this report and recommendation.

## I. PROCEDURAL HISTORY[2]

On January 4, 2006, Plaintiff applied for DIB alleging disability, since July 1, 2002, as a

---

[1] Ms. Palmer died on December 8, 2008. Accordingly, her claim for Supplemental Security Income ("SSI") benefits was dismissed by Order of this court on February 6, 2009. For the sake of convenience, Ms. Palmer, not her son, will be referred to as "Plaintiff" throughout this opinion.

[2] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Complaint and Plaintiff's Brief and Statement of Issues in Support of her Request for Review, Defendant's Response to Request for Review of Plaintiff, Plaintiff's Reply to Defendant's Response, and the administrative record ("R."), inclusive of all exhibits thereto.

result of skin disorders, asthma, severe back pain, and a cervical spine impairment. (R. 57). Benefits were denied, initially, whereupon, Plaintiff requested and was granted an administrative hearing. On April 10, 2007, Plaintiff appeared before Malvin B. Eisenberg, Administrative Law Judge ("ALJ"), for an administrative hearing; Plaintiff and Mindy Lubeck, a vocational expert ("VE"), testified at the hearing. (R. 195-285). On September 24, 2007, the ALJ, using the sequential evaluation process for disability,[3] issued an unfavorable decision. (R. 16-26). On February 28, 2008, the Appeals Council denied Plaintiff's request for review, making the ALJ's findings the final determination of the Commissioner. (R. 4-7). This case was referred to the undersigned by the Honorable Stewart Dalzell, under the authority of 28 U.S.C. § 636(b)(1)(B), for preparation of a report and recommendation.

## II. FACTUAL BACKGROUND

A. <u>Personal History</u>

Plaintiff, born on August 14, 1957, was 49 years old at the time of her administrative hearing;

---

[3]The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).
>
> 2. If claimant is found not to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).
>
> 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 404.1520(d).
>
> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

she was five feet three inches tall and weighed 130 pounds. (R. 206, 207). She completed twelfth grade, attended some college, and had past relevant work experience as a general office clerk, training representative, and dispatcher. (R. 221-22). She lived with her son and seventy-five year old mother. (R. 206).

B.  Plaintiff's Testimony

Plaintiff testified about her limitations at the administrative hearing. She explained that Richard B. Kanoff, D.O. performed surgery on her cervical spine, on July 28, 2003. (R. 227). She still experienced persistent neck pain in November 2003, when she lost her health insurance.[4] (R. 227-28). Plaintiff stated that Dr. Kanoff had prescribed a cane for her because she developed foot numbness after her July 2003 surgery and had fallen twice. (R. 237, 255). Plaintiff also suffered from eczema,[5] and had developed contagious, secondary skin infections.[6] (R. 248-49, 260).

Plaintiff experienced pain daily; sometimes it was dull and throbbing, at other times it was sharp and radiated down her arm. (R. 255). Her neck pain pre-dated the July 2003 surgery, but it had improved after the surgery. (R. 255-56). Plaintiff said she could sit in a normal chair (not a hard one) for up to two hours at a time, (R. 241), at that point, her left leg would be completely numb. (R. 252). After moving around, the feeling would to return to her leg; however, her foot would remain numb. (R. 252). Plaintiff could stand for sixty to ninety minutes at a time, (R. 241), before needing to sit down. (R. 252). She was able to lift a gallon of milk occasionally, (R. 242), and could

---

[4] Plaintiff lacked health insurance until she the state provided it on March 23, 2007. (R. 229).

[5] Eczema is "a pruritic papulovesicular dermatitis occurring as a reaction to many endogenous and exogenous agents, characterized in the acute stage by erythema, edema associated with a serious exudate between the cells of the epidermis (spongiosis) and an inflammation infiltrate in the dermis, oozing and vesiculation, and crusting and scaling; and in the more chronic stages by lichenification or thickening or both, signs of excoriations, and hyperpigmentation or hypopigmentation or both." *Dorland's Illustrated Medical Dictionary*, 528 (28th ed. 1994).

[6] Plaintiff testified that she was first diagnosed with eczema at age three, however, her condition began to worsen in 1997. (R. 251). Plaintiff stated that periodic infections would "break out" all over her body, (R. 258), and she claimed that her condition was contagious at the time of the hearing. (R. 260). Plaintiff has been treated for her eczema by Sandra M. Gawchick, D.O. who stated that Plaintiff's secondary skin infections would be contagious until the lesions dried up. (R. 177).

carry it across the room, but not home from the store. (R. 252). Plaintiff could occasionally pick up things from the floor but was unable to bend down to the floor and up without assistance. (R. 257). She could cook, dust the house, change her bed sheets, vacuum a small area rug, bathe and dress herself, use the computer, and attend a weekly 45 minute church service. (R. 244-48).

C.   Vocational Testimony

The VE categorized Plaintiff's past work as a general office clerk as semi-skilled[7] at the light exertional level,[8] her past training representative work as skilled[9] and light, and her past dispatcher work as semi-skilled and sedentary [10] (in the Dictionary of Occupational Titles ("DOT")). (R. 221-22).

The ALJ and Plaintiff's counsel asked the VE a series of hypothetical questions. The ALJ first asked the VE to consider a person of Plaintiff's age, education, and past work and with the limitations stated in Plaintiff's testimony. (R. 258-59). The VE responded that such a person could not perform any of Plaintiff's past work or any other work because of her contagious skin condition. (R. 259-60). The ALJ next asked the VE to accept the state agency residual functional capacity assessment contained in Exhibit 5F.[11] (R. 261-64). The VE responded that the person could perform all of Plaintiff's past work. (R. 265). The ALJ then asked the VE to accept the January 2007 medical source

---

[7]"Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. § 404.1568(b). It is less complex than skilled work but more complex than unskilled work. *Id.* "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." *Id.*

[8]"Light work involves lifting no more that 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

[9]"Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568(c).

[10]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools." 20 C.F.R. § 404.1567(a).

[11]The exertional abilities the ALJ mentioned were the ability to frequently lift and carry 10 pounds, occasionally lift and carry a maximum of 20 pounds, stand and walk six hours in an eight hour day, and sit six hours in an eight hour day. (R. 262)

statement (Exhibit 8F) of Sandra M. Gawchick, D.O.,[12] and a restriction to light work. (R. 265-67). The VE responded that Dr. Gawchick did not provide clear limitations on the ability to work, thus, such a person could perform all of Plaintiff's past work. (R. 267). Finally, the ALJ asked the VE to consider a person who could frequently lift less than 10 pounds, occasionally lift a maximum of 10 pounds, had to avoid even moderate exposure to wetness, temperature extremes, humidity, and dust, and who had to alternate sitting and standing at will. (R. 267-68). The VE responded that the individual could only perform Plaintiff's past dispatcher job, as it is generally performed in the national economy,[13] but none of Plaintiff's other past work.[14] (R. 268). Plaintiff's counsel then asked the VE to consider whether a hypothetical person of Plaintiff's age, education, background, and the exertional limitations to which Plaintiff testified could perform Plaintiff's dispatcher job. (R. 273). The VE repeated that Plaintiff's subjective exertional limitations would not preclude her performance of her dispatcher job – as it is described in the DOT and generally performed in the national economy – however, she would be unable to perform the job based upon her testimony concerning her skin condition. (R. 273-74).

### III.   THE ALJ's FINDINGS

Plaintiff challenges the following relevant findings issued by the ALJ after the administrative hearing:

> 5.   After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity (RFC) to perform sedentary work except she requires a sit-to-stand option. Additionally, she cannot sustain exposure to wetness, temperature extremes, dust, and humidity. Sedentary work

---

[12] The ALJ noted that Dr. Gawchick had not responded to many of the questions in the medical source statement, but had stated that Plaintiff had to avoid wetness, temperature extremes, humidity, and dust. (R. 265-66).

[13] The VE noted that Plaintiff performed her dispatcher job at the light exertional level, but the job was generally performed at the sedentary level and lent itself to a sit/stand option. (R. 268).

[14] The VE also identified other sedentary jobs the hypothetical person could perform, including clerk typist, office clerk, information clerk, and charge account clerk. (R. 268-72).

        requires occasionally lift/carrying a maximum of 10 pounds and regularly less than 10 pounds, standing/walking for up to 2 hours a day in an 8-hour workday and sitting for approximately 6 hours in an 8-hour workday. Furthermore, there are no impairments restricting fine or gross manipulative activities (20 CFR §§ 404.1545 and 416.945).

6.    [Plaintiff] is capable of performing past relevant work as a dispatcher. This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity (20 CFR §§ 404.1565 and 416.965).

7.    [Plaintiff] has not been under a disability, as defined in the Social Security Act, from July 1, 2002, through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(R. 20, 25, 26).

## IV.  DISCUSSION

A.    <u>Standard of Judicial Review</u>

    Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). It is more than a mere scintilla of evidence but may be less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should grant deference if the ALJ's findings of fact are supported by substantial evidence even when the court, acting *de novo*, might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). On the other hand, the Commissioner's legal conclusions are subject to plenary review. *Schaudeck*, 181 F.3d at 431.

B. <u>Burden of Proof in Disability Proceedings</u>

In order to be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (a) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (b) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. Under the second method, Plaintiff must initially demonstrate that a medically determinable disability prevents her from returning to past employment. *See Brown v. Bowen*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing his past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff is capable of performing given her age, education, and work experience. *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C. <u>Review of the Administrative Law Judge's Decision</u>

The ALJ, applying the sequential evaluation process, determined that Plaintiff had the residual functional capacity to perform her past relevant work as a dispatcher, consequently, she was not disabled. (R. 25-26). Plaintiff challenges the ALJ's conclusion that she is not disabled and contends that the ALJ erred in: (1) setting her residual functional capacity ("RFC"), because he improperly evaluated the medical evidence and her subjective complaints; and (2) determining that

Case 2:08-cv-01823-SD   Document 17   Filed 04/08/09   Page 10 of 16


she could perform her past relevant work as a dispatcher. *Plaintiff's Brief and Statement of Issues in Support of Her Request for Review*, ("Pl.'s Br.") at 3-13. The Commissioner requests that this court affirm the ALJ's well supported finding that Plaintiff is not disabled. *Defendant's Response to Request for Review of Plaintiff* ("Def.'s Br.") at 2-9.

I. The ALJ Erred When Evaluating Plaintiff's RFC

    a. *The ALJ's Evaluation of the Medical Evidence was Flawed in One Respect*

        i. *Richard B. Kanoff, D.O.*

Plaintiff first complains that the ALJ improperly discounted treating physician Dr. Kanoff's opinion that, as of November 2003, Plaintiff was disabled and that her disability had lasted for more that 12 months. *See* Pl.'s Br. at 4-6. The ALJ rejected this opinion for two reasons: (1) it was an opinion reserved to the Commissioner; and (2) Dr. Kanoff's opinion was rendered in February 2006, but Plaintiff's condition might have improved with treatment and the passage of time. (R. 22).

The ALJ correctly noted that Dr. Kanoff's disability conclusion was an opinion reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1). Indeed, it is not a medical opinion, *see* § 404.1527(e); hence, the ALJ was free to disregard it. *See Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 n.2 (3d Cir. 2008). Since the ALJ appropriately disregarded Dr. Kanoff's disability opinion, this court need not address the ALJ's second explanation.[15]

        ii. *Wilbert Warren, M.D.*

Plaintiff further argues that the ALJ erroneously evaluated the findings of consultative examiner, Dr. Warren. *See* Pl.'s Br. at 6-8. Plaintiff first asserts that, although the ALJ explicitly accepted Dr. Warren's findings that she had environmental limitations, he failed to accept all such

---

[15]Moreover, since Plaintiff's SSI claim is now moot and her date last insured was June 30, 2005, any medical improvement after February 2006 is irrelevant.

restrictions Dr. Warren indicated. Specifically, the ALJ omitted Plaintiff's need to avoid poor ventilation, fumes, odors and gases. *Id.* at 6.

Review of the ALJ's decision indicates that, although he did acknowledge and implicitly accepted all of the environmental limitations Dr. Warren found, (R. 25), in his RFC assessment, the ALJ omitted Dr. Warren's restrictions concerning poor ventilation, fumes, odors and gases. (R. 20). Consequently, there is no explanation for why none of the hypothetical questions posed to the VE included these four environmental limitations.

In spite of this oversight, the Commissioner argues that, because Plaintiff can perform the dispatcher job, which does not involve the four omitted limitations, the omission is harmless. *See* Def.'s Br. at 4-5 & n.2. The Commissioner's view is buttressed by the Westlaw version of the DOT and a posting on the University of Alabama's website which purports to provide guidance on how to use the DOT. *Id.* The Westlaw version of the DOT job in question, 239.367-014, *see* 1991 WL 672225, indicates that the dispatcher job does not expose one to atmospheric conditions, toxic caustic chemicals, or other environmental conditions, which may cover the four omitted environmental conditions. The University of Alabama website posting indicates that, in the DOT, "atmospheric conditions" means "fumes, odors, [and] dust;" however, this source cites no authority for its explanation. The printed version of DOT job 239.367-014, which the court has reviewed, is less informative than the Westlaw counterpart. Crucially, the printed version of the DOT does not specifically mention whether or not the job exposes one to any environmental conditions, let alone the four omitted ones. Thus, although the Commissioner's argument is cogent, the court declines to accept it because of the discrepancy between the printed DOT and the Westlaw version.

Effectively, the ALJ – without explanation – omitted limitations he accepted from the

assumptions he provided to the VE. Further, the court cannot resolve the discrepancy between the printed DOT – which does not expressly support the Commissioner's contention – and the Westlaw version – which might. Therefore, the case should be remanded so that the VE can either resolve the discrepancy between the printed and Westlaw versions of the DOT or, testify concerning whether the Plaintiff could perform her past dispatcher job despite her need to avoid poor ventilation, fumes, odors and gases.[16] *Cf. Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (remanding because the ALJ provided such an inadequate explanation for his ruling that the court found itself unable to review the ruling).

Plaintiff submits that the ALJ erred in rejecting Dr. Warren's finding that she needs a cane for balance. *See* Pl.'s Br. at 7. The ALJ rejected Dr. Warren's finding that Plaintiff needed a cane for balance based upon Dr. Warren's own observation that her gait and station were normal. (Tr. 25). However, Plaintiff contends that Dr. Warren actually found she needed a cane because he noted left lower limb neuropathy, with decreased sensation and mild left foot weakness. *See* Pl.'s Br. at 7 (citing R. 128). The court finds two flaws with Plaintiff's argument. First, Plaintiff has ignored additional reasons the ALJ provided for rejecting Dr. Warren's finding that Plaintiff required a cane: her ability to ambulate without assistance and to get on and off the examination table unassisted. (R. 25). Second, Dr. Warren did not explicitly attribute Plaintiff's need for a cane to her left lower neuropathy with decreased sensation and mild left foot weakness. Rather, he noted that she needed a cane for balance (not ambulation) without identifying the cause of her imbalance. (R. 130). Due to the lack of clarity in Dr. Warren's finding and Plaintiff's failure to acknowledge the additional

---

[16]Plaintiff also maintains that, although the ALJ's decision indicates that Plaintiff had to avoid all exposure to wetness, humidity, dust and temperature extremes, (R. 20), in his hypothetical question to the VE, the ALJ only asked about moderate, rather than total, preclusion from these four environmental conditions. *See* Pl.'s Br. at 6 & n.5. However, the ALJ asked the VE to consider a person who had to "avoid even moderate exposure to wetness, temperature extremes, humidity, or dust." (R. 268). The court understands – and expects that the VE understood – the ALJ's locution of "avoid even moderate exposure" to mean total avoidance of these four environmental conditions.

-10-

reasons the ALJ provided for rejecting Dr. Warren's finding, the court concludes that Plaintiff's argument is unpersuasive. The ALJ has provided substantial evidence to reject Dr. Warren's finding that Plaintiff needs a cane.

Plaintiff contends that the ALJ erred by ignoring Dr. Warren's finding that she had impaired ability to push and pull using her left lower extremity. *See* Pl.'s Br. at 7. However, the ALJ did acknowledge that Dr. Warren found Plaintiff had reduced pushing and pulling ability in her left lower extremity, but rejected this limitation on the ground that it was inconsistent with her normal gait and station, ability to ambulate without assistance, and getting on and off the examination table without assistance. (R. 25). Plaintiff inaccurately asserted that the ALJ ignored Dr. Warren's limitation, hence, this claim fails.

Finally, Plaintiff argues that the ALJ ignored Dr. Warren's findings that she could never balance or climb and only occasionally stoop or crouch. *See* Pl.'s Br. at 7-8. Again, this assertion of error is factually flawed. The ALJ actually acknowledged Dr. Warren's findings that Plaintiff could never balance or climb and only occasionally stoop or crouch, but rejected those limitations as inconsistent with his other findings that she had normal gait and station, could ambulate without assistance, and got on and off the examination table without assistance. (R. 25).

### iii. Dr. Gawchick

Plaintiff contends that the ALJ failed to adequately credit Dr. Gawchick's findings concerning the limiting effects of her extensive eczema. *See* Pl.'s Br. at 8-9. However, the VE, when asked to consider Dr. Gawchick's findings, opined that the doctor had not provided clear work-related restrictions caused by Plaintiff's eczema so she found Plaintiff could perform all of her past work. (R. 267). Essentially, even if the ALJ had fully credited Dr. Gawchick's findings, the

outcome of the case would have been the same. Accordingly, it is inappropriate to remand the case for re-consideration of Dr. Gawchick's findings. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (holding remand unnecessary for re-consideration of an issue that would not affect the outcome of the case).

### b. The ALJ's Evaluation of Plaintiff's Credibility Should be Sustained

Plaintiff asserts that the ALJ erred in evaluating her credibility. *See* Pl.'s Br. at 9-11. The VE testified that, if Plaintiff were fully credited concerning her impairments, she could not perform any work because of her contagious skin condition. (R. 259-60, 273-74). Since Plaintiff's testimony concerning her skin condition would cause her to be disabled, the ALJ had a duty to explicitly consider this testimony and to provide a valid reason for rejecting it.[17] *See Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994). Here, the ALJ explicitly considered Plaintiff's testimony concerning her skin contagion but rejected it based upon the absence of emergency treatment or hospitalizations for her skin condition. (R. 25). By doing so, the ALJ discharged his duty under *Adorno*.

Plaintiff further argues that the ALJ incorrectly found that she could perform a "wide range of activities," (R. 25), and compounded this error by relying upon these activities to question her credibility as regards her physical limitations. *See* Pl.'s Br. at 10-11. Possibly, Plaintiff's ability to use a computer, attend church weekly for a 45 minute service, cook, dust, vacuum a small area rug,

---

[17] Plaintiff submits that her testimony concerning the contagious characteristics of her skin condition could only be rejected based upon contrary medical evidence. *See* Pl.'s Br. at 11 (citing *Connor v. Barnhart*, Civ. A. No. 02-009, 2003 WL 57901, *5 (E.D. Pa. Jan. 6, 2003) (Dalzell, J.)). The Third Circuit has held that, when a claimant has a condition which could cause pain, her testimony concerning the extent of her pain can only be rejected if there is contrary medical evidence in the record. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993). The Third Circuit has not extended this rule concerning pain to other symptoms but Plaintiff suggests that Judge Dalzell appears to have done so in *Connor* because he faulted the ALJ in that case not only for failing to cite contrary medical evidence to reject Connor's pain testimony but also her testimony that pain affected her concentration. *See Connor*, 2003 WL 57901, at *5-*6. In the court's view, *Connor* is best understood as extending the *Mason* line of cases where a claimant's pain causes some other symptom. However, unlike in *Connor*, Plaintiff's contagious skin condition is not caused by pain. For this reason, *Connor* is distinguishable and the court declines to extend the *Mason* lines of cases to this different scenario.

and accompany her son to the grocery store – where he does all of the carrying – should not be characterized as a wide range of activities. *Cf. Schwartz v. Halter*, 134 F. Supp. 2d 640, 654 n.13 (E.D. Pa. 2001) (finding that Schwartz's ability to shop with his wife, visit his mother twice a week and drive his car every day was not an "impressive list of activities" and should not have detracted from Schwartz's credibility). Nonetheless, the VE was not impressed by Plaintiff's testimony concerning her physical limitations, rather, the VE stressed that Plaintiff's testimony concerning her contagious skin condition was what rendered her disabled. *See* R. 273-74. Since this was the salient testimony and since the ALJ did not rely upon Plaintiff's daily activities as a basis to discredit her testimony concerning her skin condition, it is not necessary to remand this case to have the ALJ reconsider the effect Plaintiff's testimony concerning her activities has on her credibility. *See Rutherford*, 399 F.3d at 553 (holding that it is unnecessary to remand for re-consideration of an issue that would not affect the outcome of the case).

2. <u>The ALJ Erred in Finding Plaintiff Could Perform her Past Work as a Dispatcher</u>

Plaintiff argues that the ALJ's conclusion that she could perform her past work as a dispatcher cannot be sustained because the hypothetical question posed to the VE, which yielded the response that she could perform her past work, was based upon a flawed and incomplete RFC. *See* Pl.'s Br. at 11-13. The court has already explained how the ALJ erred by failing to include in his RFC assessment all of the environmental limitations Dr. Warren found. *See supra* Section IV.C.1.a.ii. Since the ALJ relied upon a flawed RFC assessment in the hypothetical question he posed to the VE, the VE's response cannot constitute substantial evidence to support the ALJ's conclusion that Plaintiff can perform her past work as a dispatcher. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *see also Ramirez v. Barnhart*, 372 F.2d 546, 552 (3d Cir. 2004). On remand, the ALJ must consider the omitted environmental limitations and, if applicable, submit them

in a hypothetical question to the VE.

## V. CONCLUSION

After a thorough review of the record, this court finds that the Commissioner's final decision contains reversible error and is not supported by substantial evidence, hence, Plaintiff's request for review should be granted in part and denied in part. Accordingly, I make the following:

## RECOMMENDATION

AND NOW, this 8th day of April, 2009, I respectfully recommend that:

1. The Report and Recommendation be APPROVED and ADOPTED.

2. The Plaintiff's Request for Review be GRANTED in part and DENIED in part.

3. The case be REMANDED to the Commissioner of the Social Security Administration so that the Administrative Law Judge ("ALJ") can conduct additional proceedings consistent with the Report and Recommendation; specifically, the ALJ shall reconsider Plaintiff's residual functional capacity as regards all environmental restrictions set by Dr. Wilbert Warren and, thereafter, submit an appropriate hypothetical question to the vocational expert.

4. Judgment be ENTERED for Plaintiff and against Defendant Commissioner of the Social Security Administration.

It be so ORDERED.

/s/ Carol Sandra Moore Wells
CAROL SANDRA MOORE WELLS
United States Magistrate Judge